UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSUÉ PAGUADA,

                Plaintiff,

  -against-

YIELDSTREET INC.,

                Defendant.

Case No.: 1:20-cv-09254 (LGS)

**DECLARATION OF SYLVAIN GRANDE**

     I **SYLVAIN GRANDE**, hereby declare, pursuant to U.S.C. § 1746, that the following is true and correct:

     1.     I am the Chief Product Officer at Yieldstreet Inc. ("Yieldstreet"), and as such I am fully familiar with the facts and circumstances described herein

     2.     I submit this Declaration in support of Yieldstreet's motion to dismiss Plaintiff Josué Paguada's First Amended Complaint, dated February 3, 2021 (the "FAC,") in the above-captioned action.

     3.     Plaintiff originally filed a complaint on November 4, 2020 (the "Original Complaint"), where he alleged that, upon a purported visit to the website www.yieldstreet.com (the "Website") in October 2020, Plaintiff encountered certain accessibility barriers which denied him a user experience similar to that of a sighted individual due to the Website's lack of a variety of features and accommodations, which effectively barred him from being able to enjoy the privileges and benefits of the Website in violation of Title III of the Americans with Disabilities Act ("ADA").

     4.     Prior to Plaintiff's filing of the Original Complaint, Yieldstreet had invested time and resources in improving the Website's accessibility.

148572.00613/117051161v.1

5. In particular, Yieldstreet had undertaken to comply with the Web Content Accessibility Guidelines ("WCAG") guidelines published by the World Wide Web Consortium ("W3C"). WCAG 2.1 is the most recent version of the guidelines. WCAG 2.1 level AA are the guidelines that Plaintiff considers the "well established guidelines for making websites accessible to blind and visually impaired people." (FAC ¶ 22).

6. Moreover, although Plaintiff's allegations were not specific and did not identify where, if anywhere, Plaintiff encountered such barriers, Yieldstreet nonetheless took immediate additional action to ensure that blind and visually impaired individuals were not denied access to its services.

7. After the Original Complaint was filed, Yieldstreet added an accessibility plugin to the Website powered by UserWay.

8. The UserWay plugin is an AI-powered accessibility compliance solution that ensures the Website provides a digital experience that meets and exceeds WCAG 2.1 level AA requirements.

9. The UserWay widget provides a prompt which appears immediately upon a screen-reader user's navigation to the Website.

10. UserWay applies remediations including, image alts, form labels, image links, vague links, inaccessible interactive elements, automated integrations with 3rd party screen readers, to ensure WCAG 2.1 AA compliance.

11. UserWay also provides regular monitoring, including automated scans, to pinpoint issues that may arise and inform Yieldstreet's Website's developers so the issues can be resolved.

12. UserWay also automatically identifies any changes to the Website. If violations appear in any newly-published content, those violations are immediately remediated by the UserWay widget.

13. Plaintiff amended his Original Complaint by filing the FAC on February 3, 2021. The Website was tested and examined by UserWay, which I understand engaged in such testing in March 2021, after the filing of the FAC. The purpose of such testing was to confirm that the Website currently met the WCAG 2.1 AA standards for use by visually-impaired users, including with a screen reader

14. I have reviewed the FAC and understand that Plaintiff asserts that upon his purported visit to the Website in February 2021, he encountered several "barriers." In particular, Plaintiff alleged that:

- When accessing the homepage of Defendant's Website, Plaintiff encountered a lack of page regions or landmarks, which are necessary for users to properly identify significant page areas, such as proper headers and navigational and footer content (FAC ¶ 27).

- Plaintiff encountered skipped heading levels, which caused/causes significant difficulty navigating the Website (FAC ¶ 28).

- The Website contains a significant amount of information concerning the various investment options offered by Defendant by way of PDF download. Plaintiff attempted to download a PDF concerning art investments, but the PDF was not authored in a way that made it accessible to the visually-impaired. In addition, the PDF document can only be viewed using a separate application or plug-in, which causes confusion and navigation difficulties when using screen reader technology (FAC ¶ 29).

- The Website's FAQ page contained/contains link icons next to each FAQ category, but the link appear empty when using screen reading software. When Plaintiff attempted to discern the nature of the links, the links just read "link, link" which lead to Plaintiff's inability to discern the function or purpose of the links (FAC ¶ 30).

15. I am informed that UserWay tested the Website through March 19, 2021 and reports that the Website is WCAG 2.1 AA compliant, and in particular, does not contain the above issues identified by Plaintiff as alleged "barriers."

148572.00613/117051161v.1

16. The Website's current (up to the moment) accessibility can be confirmed by accessing UserWay's "Accessibility Inspector" tool: https://inspect.userway.org/www.yieldstreet.com

17. The present state of the Website can also be assessed by using "WAVE," a web accessibility evaluation tool developed and administered by WebAIM (Web Accessibility In Mind) at Utah State University. WAVE is an evaluation tool that was designed for the purpose of ensuring that web content is accessible to individuals with disabilities. *See* https://wave.webaim.org/about

18. A scan of the Website can be accomplished by entering a web page address in the WAVE search box, found here: https://wave.webaim.org/   The scan will identify any WCAG "errors."

19. A scan of the Website using the WAVE tool performed on March 19, 2021 shows that there are *zero* errors.  *See* https://wave.webaim.org/report#/https://www.yieldstreet.com/

20. As long as UserWay remains operating on the Website, the plugin will ensure that the Website is complaint with WCAG 2.1 AA, and/ or any successor guidelines published by the WC3, that there are no WCAG errors, and that the Website is otherwise accessible to all users.

21. Since the Website is now complaint with WCAG 2.1 AA, there is no reason for Yieldstreet to undo the changes that have been made.

22. Yieldstreet views accessibility as a central aspect, and commits to utilizing technology and auxiliary aids to ensure future accessibility.

23. Yieldstreet will ensure that UserWay (or some other website accessibility solution) will remain and continuously operating on the Website so as to ensure that the Website is always

complaint with WCAG 2.1 AA, and/ or any successor guidelines published by the WC3, and is otherwise accessible to all users.

24.   Yieldstreet will further direct that the (i) employees and agents who develop the Website and its code be regularly trained on accessibility and compliance with ADA, including to render the Website accessible to the blind and visually impaired users who employ screen readers; (ii) check the accessibility of the Website to maintain accessibility as required by the ADA; (iii) test end-user accessibility of the Website by screen reader users to ensure the Website is accessible to blind and visually-impaired users; and (iv) ensure the Website includes an accessibility policy.

25.   I direct that such regular training and efforts are regularly implemented and that the Website remains WCAG 2.1 AA compliant and fully accessible, both functionally and practically, to the blind and visually impaired, including with all screen readers.

26.   Yieldstreet of course has a strong interest in making the Website available and accessible to all viewers as everybody is a potential customer, and Yieldstreet wants the visually impaired to enjoy the same Website viewing experience as visitors with no such disability.

Dated: March 19, 2021                              _____
                                                                    SYLVAIN GRANDE